H. C. BECKWITH et al., Respondents, v. MASSILLON ROLLING MILL COMPANY, Appellant.

St. Louis Court of Appeals, April 6, 1915.

1. APPELLATE PRACTICE: Review: Sufficiency of Evidence. In determining whether the evidence is sufficient to support the judgment, it is the duty of the appellate court to consider not only the positive and direct statements of the witnesses, but the facts and circumstances as well, together with all reasonable inference afforded thereby in favor of the judgment.

2. PRINCIPAL AND AGENT: Contract of Agent in Own Name: Liability of Principal. A disclosed principal is liable on the contract of his agent with a third person, duly executed within the scope of his authority, and the fact that the agent becomes personally liable by contracting in his own name does not relieve the principal from liability.

3. ———: Sale by Agent: Right to Commission. An agent employed to sell iron on a commission entered into a contract for the sale of a certain quantity of iron at the authorized price. On the same day, but after the sale contract had been entered into, his principal notified him of an advance in price, and thereafter refused to perform the contract of sale. Held, that, upon making the contract, the agent was entitled to his commission, and the fact that he was thereafter notified of an advance in price did not defeat him of this right nor justify the principal in refusing to perform the contract.

4. ——: ——: ——: **Waiver of Commission.** An agent employed to sell iron on a commission entered into a contract. for the sale of a certain quantity of iron at the authorized price. On the same day, but after the sale contract had been entered into, his principal notified him of an advance in price, and thereafter refused to perform the contract of sale. Subsequently, in a conference between the principal, the buyer and the agent, the principal, according to plaintiff's evidence, stated that he would perform the contract, and thereafter, having. remarked that, on account of an advance in the market price of iron, very little, if any, profit would be realized from the sale, the agent remarked that, in view of that fact, he would leave the matter of his commission to the principal. The principal having refused to allow the agent any commission whatever, the latter· brought suit for the full amount of commission, in accordance with the agency contract. The principal defended on the ground that the agent waived his right to a commission in consideration of the principal's performing the contract of sale. *Held,* in view of the fact that there was evidence tending to prove that the agent did not make the remark about leaving his commission to the principal until after the latter had stated he would perform the contract of sale, the trial court was warranted in finding that the agent did not agree to waive his commission as an inducement to the principal to settle the controversy and perform the contract.

5. ——: ——: ——: ——: **Appellate Practice.** Whether an agent intended to waive all or a portion only of his commission was a matter of intention to be found by the court, and the principal was concluded, on appeal, by a finding that the agent proposed to waive a portion only.

6. **WAIVER: Intent.** Waiver is a matter of intention to be found by the court.

7. **APPELLATE PRACTICE: Conclusiveness of Trial Court's Finding.** The appellate court is concluded by a finding of the trial court which is supported by substantial evidence.

Appeal from St. Louis City Circuit Court.—*Hon. Leo S. Rassieur,* Judge.

AFFIRMED.

*Lee W. Grant* and *Felix Cornitius* for appellant.

(1) The contract between Beckwith and Hemp & Co. having been made by the plaintiff in his own name

and not in the name of or as acting for the principal,. Beckwith was liable directly to Hemp & Co. on the contract, even though Hemp & Co. may have known that he was a manufacturer's agent, or even though the plaintiff may have disclosed that fact to Hemp & Co. and may even have disclosed to Hemp & Co. the name of the Steel Company with whom plaintiff intended to place the contract. Schell v. Stephens, 50 Mo. 375;. Myers Tailoring Co. v. Keeley, 58 Mo. App. 491. (2) There was no evidence to show that either by custom or by direct authority from defendant, plaintiff had a, right on behalf of defendant to make a contract with Hemp & Co. in his own name. The contract made,. therefore, on this ground alone was unauthorized. (3) The fact that defendant relieved plaintiff from liability by making a new contract with Hemp & Co. covering the same subject-matter was not a ratification of plaintiff's act so as to entitle him to commissions, because it was made upon the distinct representation on the part of plaintiff that if defendant would make such new contract, he, plaintiff, would leave the matter of commissions wholly to the discretion of defendant, it appearing at that time that defendant would probably suffer a loss by so doing. (4) The consideration held out by plaintiff to defendant to induce defendant to relieve plaintiff from liability to Hemp was the offer on plaintiff's part to submit to a reduction or entire loss of commissions and having by this offer induced defendant to enter into the contract with Hemp, plaintiff could not afterwards withdraw the offer. Lapsley v. Howard, 119 Mo. 489. (5) That plaintiff considered his representation as to commissions to Davey personally and to the defendant by letter might amount to an entire waiver of commissions is shown by his letter of February 22, 1910, in which he writes that he would regard all offers of reduction or waiver of commissions as withdrawn. (6) The assumption by defendant of plaintiff's contract was a sufficient consid-

eration for plaintiff's waiver of commissions because it was a loss to defendant. Carr v. Card, 34 Mo. 513. It was valid also because it was a benefit to plaintiff in that it relieved him of a suit for damages. Koch v. Lay, 38 Mo. 147; Pitt v. Gentle, 49 Mo. 74; Corrigan v. Detsch, 61 Mo. 290. While it is the quality and not the quantity that determines the validity of the conclusion (Lamp Co. v. Electrical Mfg. Co., 64 Mo. App. 115), yet, in this case, the consideration was sufficient both in quantity as well as quality. Plaintiff, if sued by Hemp, stood to lose $2000, the amount of the raise in market price of steel, while he relinquished only a claim to $500. (7) The agreement of plaintiff to abide by the decision of defendant as to his commissions was not invalid, for it has been held that where an agent for an insurance company entered into a contract containing a clause which made the finding and statement of the company's officers as to the state of the account between the company and the agent conclusive, the agent was bound by the state of the account as it appeared on the books of the company and that such an agreement was binding. Coil v. Metropolitan Life Ins. Co., 65 Mo. App. 247. (8) It has also been held that where under a contract for the construction of a portion of a railroad, the contractors were to be paid on the estimates of the chief engineer of the defendant company and under such estimates the contractors had been paid in full, the plaintiff contractor could not recover a balance alleged to be due and that such estimate, in the absence of fraud, was conclusive on the plaintiff. Mackler v. Miss. River and B. T. R. Co., 62 Mo. App. 677; Williams v. Railroad, 153 Mo. 487.

*Jesse W. Barrett* for respondent.

(1) The alleged substitution of contracts between appellant and Hemp did not release appellant from its obligation to pay commissions. (a) Appellant had al-

ready accepted the contract secured by Beckwith. (b) There was no actual substitution. (c) Even if appellant had not agreed to accept the original contract, and had substituted another contract in its place, it would still be liable for commissions. Clark and Skyle, Agency (1905 Ed.), p. 816; Merriman v. McCormick Harvesting Mach. Co., 101 Wisc. 619. (2) The commissions cannot be held to be released by any new agreement with Beckwith. There was no real agreement, either (a) to abandon commissions, or (b) to reduce commissions. Even had there been an agreement to reduce commissions, it is void for want of consideration, since (a) no consideration is claimed except the agreement to accept the order; (b) acceptance of the order was unnecessary, as the appellant was already bound by its agent's act. 31 Cyc. 1574; Richardson v. Farmer, 36 Mo. 35; Higgins v. Dellinger, 22 Mo. 397; Provenchere v. Reifess, 62 Mo. App. 50; Clark & Skyle, Agency (1905 Ed.), 470; Maybray v. Kelly-Goodfellow Co., 73 Mo. App. 1. Even had there been a real agreement to adjust commissions supported by a valid consideration, Beckwith was released therefrom by appellant's failure to perform its part. Appellant refused to make any adjustment whatever. (3) Appellant's burden is to go the full length of one of the two preceding points and to win at every step. In each of those propositions it is necessary for him first to cross a question of fact before he comes to his question of law, and in each of those questions of fact he is beaten by the evidence and has lost in the trial court. The finding of the trial court on those facts is conclusive. Its decision, where there are no separate findings of law and fact, will not be disturbed where there is any theory upon which it may be upheld. Griggs v. Bridgwater, 151 S. W. 764; Glencoe Co. v. Clore, 153 S. W. 542; Thomas & Son v. Brown, 154 S. W. 423, 168 Mo. App. 667. (4) The declarations of law offered by defendant were properly refused.

NORTONI, J.—This is a suit by an agent for his commissions. A jury was waived and the case tried before the court, which found the issue for plaintiff. Defendant prosecutes the appeal from this judgment.

Plaintiff, H. C. Beckwith, conducts an iron and steel business in St. Louis, under the trade name of Beckwith Brothers & Company, while defendant is a manufacturer of iron and steel products at Massillon, Ohio. Plaintiff was the duly appointed and authorized agent of defendant for the sale of its steel products at St. Louis, and as such possessed a list of prices on such products furnished him by defendant. Under the contract of agency, plaintiff was to receive $1 per ton commission on the sale of galvanized, and fifty cents per ton on the sale of black, steel.

On November 13, 1909, plaintiff negotiated the sale of 1000 tons of black steel to Hemp & Company in St. Louis at the prices theretofore furnished him by defendant and entered into a contract of sale touching the same in his own name, but at the time disclosed the fact that he was acting as agent for defendant, his principal. After this contract of sale was concluded, but on the same day, plaintiff received a telegram from defendant, his principal, informing him of an advance of $2 per ton in the price of steel of the character of that sold. Such advance, when considered with relation to the transaction involved here, amounted to the considerable item of $2000. Plaintiff forwarded the contract of Hemp & Company, the purchaser, to defendant on the same day—that is, on a Saturday—but said nothing in his letter, which accompanied it, concerning the telegram advising of the advance in prices. On the following Monday, however, November 15, he wrote defendant acknowledging receipt of the telegram and stated that he had closed the contract with Hemp & Company before he was advised of an advance in the price. Defendant promptly returned the contract entered into by plaintiff with Hemp & Com-

Beckwith v. Rolling Mill Co.

pany and declined to furnish the steel thereunder, for the reason the price was too low.

Considerable correspondence between the parties ensued after this, and finally on February 7, plaintiff wrote defendant that Hemp & Company insisted on bringing suit against him for a breach of the contract. Thereupon defendant advised plaintiff that Mr. Davey, one of its vice-presidents, would call upon him with a view of adjusting the matter. February 11, Mr. Davey arrived and he and plaintiff discussed the situation fully. After interviewing Hemp & Company in company with plaintiff, Mr. Davey informed them that defendant would accept the contract and fill the order. During this interview between Mr. Davey, representing defendants, and plaintiff, Mr. Davey insisted that defendant would lose money on the contract, or at least could make no profit, in view of the advance in the price of steel.

It is said that Mr. Davey made some figures pertaining to the cost and reckoned, too, on a commission of fifty cents per ton to plaintiff, for the steel involved was of the character on the sales of which plaintiff was to receive fifty cents per ton as his commissions. On these figures and such reckoning, he asserted defendant would lose money or at least realize no profit on the transaction. Thereupon plaintiff said, in reply, "If that is the case, I will leave the matter of my commissions with you," to which Mr. Davey answered, "We will take care of the business; I will make recommendations to Mr. Clark (defendant's president) in regard to commissions, or compensation." But plaintiff says, concerning this conversation, that he did not say he would waive all commissions. On the contrary, it was merely the amount of the commissions he should receive that was to be left for defendant to decide. Concerning the same matter Mr. Davey testifies that the question of commissions was not settled. He says plaintiff suggested that he

would leave the matter of commissions in the hands of defendant, and that he (Davey) was to make recommendations concerning it to Mr. Clark, the president of defendant company. But he says, too, that he made no recommendations whatever concerning such commissions to defendant as the officers of the company "squelched" him before he got that far along in his report.

At any rate, as a result of this meeting between plaintiff and Mr. Davey in St. Louis, defendant agreed to furnish the steel theretofore sold by plaintiff to Hemp & Company on the price and terms originally stipulated. Hemp & Company's contract of purchase was sent forward to defendant and it prepared a new instrument of writing between defendant as the seller and Hemp & Company as the purchaser and sent it forward to Hemp & Company for signature. Both parties signed it and defendant furnished the steel thereunder, as before said, according to the terms of the original contract of plaintiff, their agent.

Supplemental to the conversation with Mr. Davey and on the following day, February 12, plaintiff wrote defendant inclosing the original contract with Hemp & Company and expressed appreciation that the matter was settled and that defendant would be able to handle the business without a loss. Further, he said, "In regard to our commission on this business, we advised Mr. Davey that we would leave the matter entirely to you to allow us whatever amount you may see fit, and assure you that your decision in the matter will be entirely satisfactory to us." After receiving this letter, defendant refused to pay plaintiff any commission whatever on the sale and thereupon plaintiff wrote defendant a second letter withdrawing the proposal that defendant should fix the amount of the commission and claimed his regular commission of fifty cents per ton—that is, $500 on the entire sale. Defendant terminated plaintiff's agency forthwith and

on continuing its refusal to pay commissions in any amount, plaintiff instituted this suit.

As above stated, a jury was waived and the case tried before the court. No instructions were given on behalf of plaintiff and none on behalf of defendant. However, four instructions requested by defendant were refused. But these refused instructions are not to be considered here, for no point is made with respect to the ruling of the court concerning them. Indeed, defendant says in its brief, "The only assignment of error is that the judgment should have been for the defendant." This being true, we are to consider only the sufficiency of the evidence to support the judgment for plaintiff. In so doing, it is the duty of the court to reckon not only with the positive and direct statements of the witness, but with the facts and circumstances in evidence and all reasonable inferences afforded thereby in favor of the judgment of the trial court. When the case is thus viewed, there appears to be substantial evidence in support of the finding on the crucial question—that is, that plaintiff did not agree as an inducement to a settlement of the controversy to waive his entire commission. Defendant presents and argues the case here on the theory that this he did beyond question, but we are not so persuaded.

Touching this matter, defendant says: "The trial court seems to have wholly ignored the offer of the plaintiff to leave the question of his commissions entirely with the defendant. He seems to have thought that the only question involved in the case was, Did the agent take a contract for sale of merchandise which was afterwards furnished by the defendant, and if he did, then the defendant ratified the contract, and, therefore, having ratified the contract, must pay the agent the amount of his commissions. If we leave out the offer of the plaintiff made to the defendant, and upon which the defendant acted, there might be good ground for the court to decide as it did, *but when we take into*

*consideration the inducement held out by the plaintiff to the defendant and the fact that the defendant relied upon that inducement in making the new contract, and in furnishing the steel, then the judgment of the trial court seems to be wholly wrong."*

There can be no doubt that plaintiff was defendant's agent, authorized to sell the steel, and, according to the evidence, he sold it to Hemp & Company at the then current price and entered into a written contract respecting the same. He disclosed defendant to be his principal at the time, and, therefore, though the contract was entered into by plaintiff in his own name, defendant was nevertheless bound to fulfill it. No one can doubt that the principal, disclosed at the time by his authorized agent, may be required to respond on the contract of such agent duly executed within the scope of his authority. The mere fact that the agent becomes personally liable through contracting in his own name avails nothing against the right of the other party to the contract to pursue the principal as well. [See Provenchere v. Reifess, 62 Mo. App. 50; Richardson v. Farmer, 36 Mo. 35; Higgins v. Dellinger, 22 Mo. 397; 31 Cyc. 1574.] Having thus made the sale at the current prices and performed the full measure of his undertaking in the premises, plaintiff's commissions were then earned, and it is agreed the amount of such commissions was fifty cents per ton, or $500 on the entire transaction, if recoverable at all.

The fact that plaintiff received a telegram later in the day advising him of an advance in the price of steel $2 per ton is without influence whatever on his right to commissions accruing out of the transaction consummated a few hours before. Neither did such fact furnish defendant any justification for refusing to abide the contract entered into by its authorized agent prior thereto. But though such be true, a controversy between the parties ensued and this is revealed in the correspondence in evidence. Finally defendant sent

its vice-president, Mr. Davey, to see plaintiff and also Hemp & Company, with a view of adjusting the matter. As a result of this conference, defendant agreed to adopt the contract without further ado and fill the order, which it did. But it says it did so only on an agreement on the part of plaintiff that he would waive his entire commissions and forego them entirely.

It is unnecessary to decide the point as to whether any consideration moved from defendant to plaintiff for this agreement through adopting a contract the obligation of which obviously already rested upon defendant, for the question may be disposed of on the evidence tending to prove that plaintiff made no such agreement before defendant agreed to fill the order. Concerning this it appears that Mr. Davey, defendant's vice-president, and plaintiff discussed the matter *pro* and *con* and together called upon Hemp & Company. While in the office of Hemp & Company Mr. Davey told them, according to the evidence in the record most favorable to plaintiff, that defendant would fill the order according to the contract. Moreover, he told plaintiff the same. And it does not appear that any agreement touching the waiver of commissions was had theretofore. Davey says this and that he was to submit the matter to defendant. Indeed, plaintiff testifies that he at no time proposed to surrender or waive all of his commissions, but only offered to leave the amount of such for determination on the part of defendant, and this was after Mr. Davey had figured out that the transaction would yield no profit after considering the cost of filling the order and paying fifty cents per ton commission. Defendant's, letter of February 12, so much relied upon as tending to show a waiver of all commissions, is not conclusive, for instead of saying this it suggests that plaintiff would be satisfied with "whatever amount you see fit," as though the amount of, rather than the right to, commissions was committed to defendant's judg-

ment.   Even on this, it is to be said the matter of waiver is one of intention to be found by the court— that is, whether plaintiff intended to waive all or a portion only of the commissions—and defendant is con- cluded here by the finding that he proposed to waive a portion only.   [See Francis v. Sup. Lodge A. O. U. W., 150 Mo. App. 347, 130 S. W. 500.]   Defendant de- clined to pay commissions at all and, therefore, omitted to fix any amount.   Had it fixed the amount it may be that such would have operated an acceptance of plain- tiff's offer and concluded the matter.   But on its re- jection of the proposal, no one can doubt the plaintiff's freedom to assert his original right.

But this is beside the precise question to be con- sidered at the moment, for such relates to the evidence tending to prove, as asserted, that plaintiff agreed to waive his commission before Mr. Davey agreed to fill the order or accepted the contract on the part of de- fendant after, as argued, being induced to do so by an agreement on the part of plaintiff to waive commis- sions.   Concerning this, Mr. Davey's evidence alone is sufficient to support the finding of the trial court and, indeed, it coincides precisely with that given by plaintiff.   Mr. Davey says expressly that the matter of commissions was not settled at the time and that plaintiff agreed to leave it with defendant, while he (Davey) agreed to make recommendations concerning it, and such recommendations he omitted to make be- cause he says the officers of the company "squelched" him before he got to it.   Then the following questions and answers in Mr. Davey's testimony appear:   "Q. Did you understand from your conversation with him that it was something to be taken up by the mill later? A.   Well, I thought that way; yes.   Q.   Did he agree to leave this to your recommendations before you agreed to accept the contract, or after?   A.   I would not be sure."   The latter question and answer alone show that even Mr. Davey declined to testify that

plaintiff agreed to waive his commission before Davey accepted the contract for defendant and as an inducement therefor. Plaintiff's evidence is to the effect that he did not so agree. Such being the evidence in the record, it is clear enough that the court was justified in finding the fact as it did—that is, that plaintiff did not agree to waive his commission as an inducement to defendant to settle the controversy, finally accept the contract, and ship the steel.

The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.